## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

|  |  |
|---|---|
| **WILLIAM D. WARNER**, on behalf of himself and on behalf of all other similarly situated individuals,<br><br>     Plaintiff,<br><br>v.<br><br>**TRINITY PETROLEUM MANAGEMENT, LLC** AND **RIMROCK RESOURCE OPERATING, LLC**,<br><br>     Defendants. | Case No. 1:25-cv-00748<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff William D. Warner ("Plaintiff"), individually and on behalf of all other similarly situated individuals (the "Class" or "Class Members," as defined below), by and through his undersigned counsel, files this Class Action Complaint against Trinity Petroleum Management, LLC ("Trinity") and Rimrock Resource Operating, LLC ("Rimrock") (collectively, "Defendants") and alleges the following based on personal knowledge of facts, upon information and belief, and based on the investigation of his counsel as to all other matters.

## I.     NATURE OF THE ACTION

1.     Plaintiff brings this class action lawsuit against Defendants for their negligent failure to protect and safeguard Plaintiff's and the Class's highly sensitive personally identifiable information ("PII"). As a result of Defendants' negligence and

insufficient data security, cybercriminals easily infiltrated Trinity's inadequately protected computer systems and **stole** the PII of Plaintiff and the Class (the "Data Breach" or "Breach"). Now, Plaintiff's and the Class's PII is in the hands of cybercriminals who will undoubtedly use their PII for nefarious purposes for the rest of their lives.

2.      Trinity is a business that offers oil and gas outsourcing services such as accounting, revenue accounting, production and expenditure accounting, land administration, state and federal oil and gas audits, tribal compliance reporting, and operations reporting.[1]

3.      Rimrock is a business in the oil and gas industry that focuses on exploration, acquisition, and development in the Mid-Continent Region.[2] Rimrock utilized Trinity's outsourcing services.

4.      Defendants solicited, acquired, and collected the PII of Plaintiff and the Class. By taking possession of Plaintiff and the Class's PII, Defendants implicitly agreed to safeguard and protect their PII. Moreover, each Defendant had a duty to protect Plaintiff's and the Class's PII from unauthorized access.

5.      Unfortunately, neither Defendant took these duties and responsibilities seriously, resulting in a massive and preventable data breach.

6.      According to Trinity, on October 14, 2024, Trinity discovered unauthorized access to its systems.[3]

---

[1] http://www.trinitymgt.com/why-outsource/.
[2] https://www.rimrockresource.com/company-news/.
[3] *See* Ex. 1.

7.      After an investigation, Trinity learned that an unauthorized criminal actor gained access to its systems between October 10, 2024, and October 14, 2024.[4]

8.      The total number of individuals impacted by the data breach has yet to be disclosed, but the Breach is estimated to have impacted thousands of individuals.

9.      The types of PII stolen in the Data Breach included names and Social Security numbers (collectively, "Private Information").[5]

10.     Despite learning of the Data Breach in October 2024, Trinity inexplicably waited to issue direct notice of the Data Breach to the victims until February 2025.[6]

11.     Shortly after the Breach, notorious ransomware group, "BianLian," claimed responsibility for the Breach, as pictured below:[7]

# Trinity Petroleum Management, LLC

Trinity Petroleum Management provides full-service outsourcing for the upstream oil and gas industry.
Read more →

12.     BianLian stole an estimated 1.2 TB of Private Information from Trinity:[8]

[IMAGE ON FOLLOWING PAGE]

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] https://x.com/FalconFeedsio/status/1860093624350068840.
[8] https://www.breachsense.com/breaches/trinity-petroleum-management-data-breach/.

| Data Breach Report | |
|---|---|
| Victim | trinitymgt.com |
| Threat Actor | BianLian |
| Date Discovered | Nov 25, 2024 |
| Description | Trinity Petroleum Management provides full-service outsourcing for the upstream oil and gas industry. |
| Leak Size | 1.2TB |

13.    Due to Defendants' negligence, cybercriminal group—BianLian—has stolen and obtained everything it needs to commit identity theft and wreak havoc on the financial and personal lives of thousands of individuals.

14.    Now, and for the rest of their lives, Plaintiff and the Class Members will have to deal with the danger of identity thieves possessing and misusing their Private Information. Even those Class Members who have yet to experience identity theft have to spend time responding to the Breach and are at an immediate and heightened risk of all manners of identity theft as a direct and proximate result of the Data Breach. Plaintiff and Class Members have incurred and will continue to incur damages in the form of, among other things, identity theft, attempted identity theft, lost time and expenses mitigating harms, increased risk of harm, damaged credit, deprivation of the value of their Private Information, loss of privacy, and/or additional damages as described below.

4

15.    In sum, Plaintiff and the Class will face an imminent risk of fraud and identity theft for the rest of their lives because (i) Defendants failed to protect Plaintiff's and the Class's PII, allowing a massive and preventable Data Breach to occur; (ii) the cybercriminals who perpetrated the Breach stole Private Information that they will sell on the dark web (if they have not already); (iii) Defendants failed to provide any assurance that they paid a ransom to prevent Plaintiff's and the Class's data from being released on the dark web; and (iv) Defendants offered credit monitoring to Plaintiff and the Class, an offer it need not make if no PII was stolen and at risk of misuse.

16.    Plaintiff brings this action individually and on behalf of the Class, seeking compensatory damages, punitive damages, nominal damages, restitution, and injunctive and declaratory relief, reasonable attorney fees and costs, and all other remedies this Court deems proper.

## II.    THE PARTIES

17.    Plaintiff **William D. Warner** is an individual domiciled in Oklahoma City, Oklahoma. Plaintiff received a Notice of Data Breach Letter ("Notice Letter") from Defendants dated February 13, 2025, notifying him that his name and Social Security number were compromised and likely exfiltrated.[9]

18.    Defendant **Trinity Petroleum Management, LLC** is a limited liability company organized under the laws of the State of Colorado. Trinity's principal address is located at 1670 Broadway, Suite 2000, Denver, CO. Trinity's Registered Agent is Katie

---

[9] Ex. 1.

5

Hynes, and she can be served at the same address.

19.    Defendant **Rimrock Resource Operating, LLC** is a foreign limited liability company under the laws of the State of Delaware. Rimrock's principal place of business is located at 20 E. 5th Street, Suite 1300, Tulsa, OK 74103. Rimrock's registered agent is C.T. Corporation System, located at 1833 South Morgan Rd., Oklahoma City, OK 73128.

### III.    JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than one hundred putative Class Members, and minimal diversity exists because many putative Class Members are citizens of a different state than Defendants.

21.    This Court has personal jurisdiction over Defendants because Defendants are registered to do business in the State of Colorado; have their principal place of business in this District; conduct substantial business in this District through their headquarters, offices, and affiliates; engaged in the conduct at issue here in this District; and/or otherwise has substantial contacts with this District and purposely availed themselves to the Courts in this District.

22.    Venue is proper in this District under 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) as a substantial part of the events giving rise to the claims emanated from activities within this District, including the Data Breach at issue.

6

## IV.    FACTUAL ALLEGATIONS

### A.    The Collection of Plaintiff's and the Class's PII.

23.    Trinity provides accounting services to businesses within the oil and gas industry.[10]

24.    Trinity has an estimated annual revenue of $9.7 million.[11]

25.    "Rimrock Resource Operating, LLC was formed in 2015 as a Tulsa, Oklahoma based company to manage and operate investments made by Rimrock Resource Partners, LLC which has capital commitments from Post Oak Energy Capital and Ceja Corporation with a focus on exploration, acquisition and development opportunities, primarily in the Mid-Continent Region."[12]

26.    "In July 2016, Rimrock announced that it closed a $150 million acquisition of assets from an undisclosed seller.  The oil and gas assets cover approximately 24,500 net leasehold acres that are 100 percent held by production and 3,000 net mineral acres located predominately in the Golden Trend shallow portion of the SCOOP play.  Exiting 2020, Rimrock controls over 35,000 acres, has drilled or participated in over 90 horizontal wells and has operated interest in over 220 vertical wells."[13]

27.    In other words, Defendants could have afforded to implement adequate data security prior to the Breach but deliberately chose not to.

---

[10] *Id.*

[11] https://www.zoominfo.com/c/trinity-petroleum-management/67764403.

[12] https://rimrockresource.com/.

[13] https://rimrockresource.com/about-us/.

28.     In the ordinary course of business, Defendants receive the PII of individuals, such as Plaintiff and the Class, from the entities and individuals that utilize Defendants' services.

29.     Defendants obtain, collect, use, and derive a benefit from the PII of Plaintiff's and Class Members. Defendants uses the PII they collect to provide services, making a profit therefrom. Defendants would not be able to obtain revenue if not for the acceptance and use of Plaintiff's and the Class's PII.

30.     By collecting Plaintiff's and the Class's PII, Defendants assumed legal and equitable duties to Plaintiff and the Class to protect and safeguard their PII from unauthorized access and intrusion.

31.     Trinity failed to adopt reasonable and appropriate security practices and procedures including administrative, physical security, and technical controls to safeguard Plaintiff's and the Class's Private Information.

32.     Likewise, Rimrock failed to ensure that its vendor—Trinity—used reasonable and appropriate security practices and procedures including administrative, physical security, and technical controls to safeguard Plaintiff's and the Class's Private Information prior to retaining Trinity's services.

33.     As a result, Plaintiff's and Class Members' Private Information was accessed and stolen from Trinity's inadequately secured data systems in a massive and preventable Data Breach.

**B.      Trinity's Massive and Preventable Data Breach.**

34.      On October 14, 2024, Trinity discovered unauthorized access to its systems.

35.      After an investigation, Trinity learned that notorious ransomware group—BianLian—gained access to its systems between October 10, 2024, and October 14, 2024.[14]

36.      Trinity acknowledged data was stolen in the Breach and notified Class Members which data points of theirs may have been exfiltrated in the Data Breach by sending out Notice of Data Breach Letters to Plaintiff and the Class.

37.      After the Data Breach not only did BianLian admit it stole 1.2 TB of Private Information from Trinity, but also leaked some (if not all) of the Private Information it stole on the dark web, as evidenced below:

[IMAGE ON NEXT PAGE]

---

[14] Ex. 1; https://www.ransomlook.io/group/bianlian.

**BianLian**                                    Home  Companies  Tags  Contacts

Work with us: targets' providers, software engineers, pentesters, journalists.

Tox: A8AD0FD4C931CDAA1408D5A60CBF38CEDF46B41E19A8A55E4EF1F1848AF3416AE52D278D37DF

Email: deepmind@onionmail.org

# Trinity Petroleum Management, LLC

https://www.trinitymgt.com

Trinity Petroleum Management provides full-service outsourcing for the upstream oil and gas industry.

*President and CEO*: J. Samuel Butler

```
Business email: sbutler@trinitymgt.com
Mobile Phone: +1 (303) 888-8920
```

*Chief Information Officer*: Wilmer "Bill" W. Thieme

```
Business email: bthieme@trinitymgt.com
Mobile Phone: +1 (303) 590-8029
```

*Director of Information Technology*: John Zagnoli

```
Business email: jzagnoli@trinitymgt.com
Mobile Phone: +1 (303) 667-8843
```

*Data Volume*: ~1.2 TB

Data description:

```
* Accounting data of other companies.
* Personal data of employees and contractors of other companies.
* Contracts and NDAs
* Passports and ID cards
* Operational data.
* Business files.
* File server data.
```
......................................................................................................................................

Data from these organizations is stored on the Trinity Petrolem Management network and is available for download:

```
* Silverback
* Exaro
* Genesis
* Ursa
* Nucor
* FELIX_II
* RimRock
* Confluence
* ROG-Denver
* Evolution
* Coleman
* Axia_II
* 1099 PROCESSING
* Valkyrie
* West_Energy
* Cirque
* Validus
* NNOGC
* Oak_Prairie
```

10

38.     Specifically, BianLian posted sensitive documents containing email addresses, investment information, operating account statements, W-9's containing Social Security numbers, and other sensitive and confidential information on its dark website.[15]

39.     Despite discovering the Data Breach in October 2024, Trinity did not begin notifying individuals of the Data Breach until on or around February 13, 2025—approximately three (3) months later.[16]

40.     In recognition of the severity of the Data Breach, and the imminent risk of harm Plaintiff and the Class face, Trinity made a measly offering of twelve (12) months of identity theft protection services.[17] Such an offering is inadequate and will not prevent identity theft but will only alert Data Breach victims once identity theft has already occurred.

41.     All in all, Defendants failed to take the necessary precautions required to safeguard and protect Plaintiff's and Class Members' PII from unauthorized access and exploitation.

42.     Defendants' actions represent a flagrant disregard of the rights of Plaintiff and the Class, both as to privacy and property.

**C.     Rimrock Negligently Hired and Supervised Trinity.**

43.     Businesses who collect consumers' Private Information—such as Rimrock—and provide this information to vendors— such as Trinity—owe the individuals

---

[15] *Id.*
[16] Ex. 1.
[17] *Id.*

to whom the information relates a duty to ensure that the vendor utilizes and adopts reasonable measures to protect the Private Information from disclosure and theft and to keep it safe and confidential. This duty arises under contract, statutory and common law, industry standards, representations made to Plaintiff and Class Members, and because it is foreseeable that hackers with nefarious intentions will target the Private Information and use it to harm the affected individuals.

44.   Rimrock was negligent and/or failed to confirm when retaining Trinity's services that Plaintiff's and Class Members' Private Information would be protected from unauthorized access, that Trinity maintained adequate data security, procedures, practices, infrastructure, and protocols, and that Plaintiff's and the Class's Private Information would not be subject to unauthorized access and exfiltration.

45.   Rimrock owed, and continue to owe, duties of care to Plaintiff and Class Members to: (i) exercise reasonable care to secure and protect the Private Information in its possession and the Private Information in the possession of any entity Rimrock hired to provide services—such as Trinity—from unauthorized access; (ii) ensure Trinity implemented adequate data security, practices, procedures, infrastructure, and protocols compliant with applicable law and industry standards; (iii) ensure Trinity had adequate processes in place to quickly detect a data breach and to timely act on warnings regarding data breaches; (iv) investigate Trinity's data security practices, infrastructure, procedures, and protocols prior to hiring Trinity; and (v) monitoring Trinity's security procedures, practices, and protocols during the relationship. Rimrock utterly failed to uphold these

12

duties, as evidenced by the Data Breach, thereby breaching its duties owed to Plaintiff and the Class.

46.    As a direct and proximate cause of Rimrock's breaches, and failure to properly interview and vet Trinity, Plaintiff and the Class have been damaged as set forth herein.

47.    Had Rimrock ensured Trinity implemented reasonable cybersecurity measures prior to allowing Trinity access to Plaintiff's and the Class's Private Information—including adequate safeguards for initial access, encryption or redaction of personal data elements, and sufficient logging, monitoring, and alerting tools to detect unauthorized activity—criminals would not have been able to access Plaintiff's and Class Members' Private Information.

48.    Rimrock failed to adequately protect Plaintiff's and Class Members' Private Information by failing to ensure the vendors it utilized—such as Trinity—implemented industry standard data security procedures, practices, and protocols to protect Plaintiff's and Class Members Private Information from hackers.

49.    Rimrock breached it duties and obligations by: (a) failing to ensure Trinity designed, implemented, monitored, and maintained reasonable network safeguards against foreseeable threats; (b) failing to ensure Trinity designed, implemented, and maintained reasonable data retention policies; (c) failing to ensure Trinity adequately trained or oversaw other service providers regarding data security; (d) failing to ensure Trinity complied with industry standard data security practices; (e) failing to warn Plaintiff and Class Members of Trinity's inadequate data security practices; (f) failing to ensure Trinity

encrypted or adequately encrypted the Private Information that was stored on Trinity's network server; (g) failing to ensure Trinity had systems or processes in place to recognize or detect that Trinity's network had been compromised and accessed; (h) failing to ensure Trinity utilized widely available software able to detect and prevent this type of attack; and (i) failing to ensure Trinity otherwise adequately secured the Private Information using reasonable and effective data security procedures free of foreseeable vulnerabilities and data security incidents.

**D.    Cybercriminals Have Used and Will Continue to Use Plaintiff's and the Class's PII to Defraud Them.**

50.    PII is of great value to hackers and cybercriminals, and the data stolen in the Data Breach can and will be used in a variety of ways by criminals to exploit Plaintiff and the Class Members and to profit off their misfortune.

51.    Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[18]

52.    For example, with the PII stolen in the Data Breach, including Social Security numbers, identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other

---

[18] *Facts + Statistics: Identity Theft and Cybercrime*, INSURANCE INFO. INST., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

harmful forms of identity theft.[19] These criminal activities have and will result in devastating financial and personal losses to Plaintiff and the Class Members.

53.    Social security numbers are particularly sensitive pieces of personal information. As the Consumer Federation of America explains:

> **Social Security number.** *This is the most dangerous type of personal information in the hands of identity thieves* because it can open the gate to serious fraud, from obtaining credit in your name to impersonating you to get medical services, government benefits, your tax refunds, employment – even using your identity in bankruptcy and other legal matters. It's hard to change your Social Security number and it's not a good idea because it is connected to your life in so many ways.[20]
>
> [Emphasis added.]

54.    PII is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it for years.[21]

55.    This was a financially motivated Breach, as the only reason the cybercriminals go through the trouble of running targeted cyberattacks against companies like Trinity is to get ransom money and/or information that they can monetize by selling on the black market for use in the kinds of criminal activity described herein.

---

[19] *See, e.g.*, Christine DiGangi, *What Can You Do with a Stolen Social Security Number*, CREDIT.COM (June 29, 2020), https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[20] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.

[21] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, available at https://www.gao.gov/products/gao-07-737.

56.    Indeed, a social security number, date of birth, and full name can sell for $60 to $80 on the digital black market.[22]

57.    "[I]f there is reason to believe that your personal information has been stolen, you should assume that it can end up for sale on the dark web."[23]

58.    These risks are both certainly impending and substantial. As the Federal Trade Commission ("FTC") has reported, if hackers get access to PII, *they will use it*.[24]

59.    Hackers may not use the information right away, but this does not mean it will not be used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information *may continue for years*. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[25]

---

[22] Michael Kan, *Here's How Much Your Identity Goes for on the Dark Web* (Nov. 15, 2017), https://www.pcmag.com/news/heres-how-much-your-identity-goes-for-on-the-dark-web.

[23] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.

[24] Ari Lazarus, *How fast will identity thieves use stolen info?*, MILITARY CONSUMER (May 24, 2017), https://www.militaryconsumer.gov/blog/how-fast-will-identity-thieves-use-stolen-info.

[25] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown,* GAO (July 5, 2007), available at https://www.gao.gov/products/gao-07-737.

60.     For instance, with a stolen social security number, which is part of the PII compromised in the Data Breach, someone can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.[26]

61.     With this Data Breach, identity thieves have already started to prey on the Defendants Data Breach victims, and we can anticipate that this will continue.

62.     Identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit as well as protecting themselves in the future.[27]

63.     Trinity's offer of one (1) year of identity monitoring to Plaintiff and the Class is woefully inadequate and will not fully protect Plaintiff from the damages and harm caused by its failures.

64.     The full scope of the harm has yet to be realized. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used.

65.     Once the twelve (12) months have expired, Plaintiff and Class Members will need to pay for their own identity theft protection and credit monitoring for the rest of their lives due to Defendants' gross negligence.

---

[26] *See, e.g.*, Christine DiGangi, *What Can You Do with a Stolen Social Security Number*, CREDIT.COM (June 29, 2020), https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[27] *Guide for Assisting Identity Theft Victims*, FEDERAL TRADE COMMISSION (Sept. 2013), *available at* https://www.global-screeningsolutions.com/Guide-for-Assisting-ID-Theft-Victims.pdf.

66.     Furthermore, identity monitoring only alerts someone to the fact that they have already been the victim of identity theft (*i.e.*, fraudulent acquisition and use of another person's PII)—it does not prevent identity theft.[28]  Nor can an identity monitoring service remove personal information from the dark web.[29]

67.     "The people who trade in stolen personal information [on the dark web] won't cooperate with an identity theft service or anyone else, so it's impossible to get the information removed, stop its sale, or prevent someone who buys it from using it."[30]

68.     As a direct and proximate result of the Data Breach, Plaintiff and the Class have been damaged and have been placed at an imminent, immediate, and continuing increased risk of harm from continued fraud and identity theft. Plaintiff and the Class must now take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

69.     Even more seriously is the identity restoration that Plaintiff and other Class Members must go through, which can include spending countless hours filing police

---

[28] *See, e.g.*, Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, CNBC (Nov. 30, 2017, 9:00 AM), https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the-cost.html.

[29] *Dark Web Monitoring: What You Should Know*, CONSUMER FEDERATION OF AMERICA (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know.

[30] *Id.*

reports, filling out IRS forms, Federal Trade Commission checklists, Department of Motor Vehicle driver's license replacement applications, and calling financial institutions to cancel fraudulent credit applications, to name just a few of the steps Plaintiff and the Class must take.

70.    Plaintiff and the Class have or will experience the following concrete and particularized harms for which they are entitled to compensation, including:

a.  Actual identity theft;

b.  Trespass, damage to, and theft of their personal property including PII;

c.  Improper disclosure of their PII;

d.  The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

e.  Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cybercriminals have their PII;

f.  Ascertainable losses in the form of time taken to respond to identity theft and attempt to restore identity, including lost opportunities and lost wages from uncompensated time off from work;

g.  Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach;

h.  Ascertainable losses in the form of deprivation of the value of Plaintiff's and Class Members' Private Information for which there is a well-established and quantifiable national and international market;

    i.   The loss of use of and access to their credit, accounts, and/or funds;

    j.   Damage to their credit due to fraudulent use of their PII; and/or

    k.   Increased cost of borrowing, insurance, deposits, and the inability to secure more favorable interest rates because of a reduced credit score.

71.    Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which remains in the possession of Defendants, is protected from further breaches by the implementation of industry standard security measures and safeguards.

72.    Trinity has shown itself wholly incapable of protecting Plaintiff's and the Class's Private Information.

73.    Plaintiff and Class Members also have an interest in ensuring that their Private Information that was provided to Defendants is removed from all of Defendants' servers, systems, and files.

74.    Trinity itself acknowledged the harm caused by the Data Breach because it offered Plaintiff and Class Members woefully inadequate identity theft repair and monitoring services. Twelve (12) months of identity theft and repair and monitoring is, however, inadequate to protect Plaintiff and Class Members from a lifetime of identity theft risk.

75.    Trinity further acknowledged that the Data Breach would cause inconvenience to affected individuals and that financial harm would likely occur because

20

it advised individuals to enroll in credit monitoring, place a fraud alert/security freeze on credit files, and obtain a free credit report.[31]

76.    Trinity also admitted its current data security measures were not adequate because it stated, "we implemented additional security safeguards."[32]

77.    These enhanced protections should have been in place before the Data Breach.

78.    At Trinity's suggestion, Plaintiff and the Class are desperately trying to mitigate the damage that Defendants have caused them.

79.    Given the kind of Private Information Defendants made accessible to hackers, however, Plaintiff and the Class are certain to incur additional damages. Because identity thieves have their PII, Plaintiff and all Class Members will need to have identity theft monitoring protection for the rest of their lives. Some may even need to go through the long and arduous process of getting a new Social Security number, with all the loss of credit and employment difficulties that come with a new number.[33]

80.    None of this should have happened because the Data Breach was entirely preventable.

**E.    Defendants were Aware of the Risk of Cyberattacks.**

81.    Data security breaches have dominated the headlines for the last two decades.

---

[31] Ex. 1.

[32] *Id.*

[33] *What happens if I change my Social Security number*, LEXINGTON LAW (Aug. 10, 2022), https://www.lexingtonlaw.com/blog/credit-101/will-a-new-social-security-number-affect-your-credit.html.

21

And it doesn't take an IT industry expert to know it. The general public can tell you the names of some of the biggest cybersecurity breaches: Target,[34] Yahoo,[35] Marriott International,[36] Chipotle, Chili's, Arby's,[37] and others.[38]

82.    The number of data breach victims has surpassed 1 billion for the first half of 2024, according to the Identity Theft Resource Center.[39]

83.    Trinity should certainly have been aware, and indeed was aware, that it was at risk of a data breach that could expose the PII that it collected and maintained.

84.    Trinity was clearly aware of the risks it was taking and the harm that could result from inadequate data security but threw caution to the wind.

**F.    Trinity Could Have Prevented the Data Breach**.

85.    Data breaches are preventable.[40] As Lucy Thompson wrote in the DATA

---

[34] Michael Kassner, *Anatomy of the Target Data Breach: Missed Opportunities and Lessons Learned*, ZDNET (Feb. 2, 2015), https://www.zdnet.com/article/anatomy-of-the-target-data-breach-missed-opportunities-and-lessons-learned/.

[35] Martyn Williams, *Inside the Russian Hack of Yahoo: How They Did It*, CSOONLINE.COM (Oct. 4, 2017), https://www.csoonline.com/article/3180762/inside-the-russian-hack-of-yahoo-how-they-did-it.html.

[36] Patrick Nohe, *The Marriot Data Breach: Full Autopsy*, THE SSL STORE: HASHEDOUT (Mar. 22, 2019), https://www.thesslstore.com/blog/autopsying-the-marriott-data-breach-this-is-why-insurance-matters/ (last visited Oct. 9, 2023).

[37] Alfred Ng, *FBI Nabs Alleged Hackers in Theft of 15M Credit Cards from Chipotle, Others*, CNET (Aug. 1, 2018, 12:58 PM), https://www.cnet.com/news/fbi-nabs-alleged-hackers-in-theft-of-15m-credit-cards-from-chipotle-others/?ftag=CMG-01-10aaa1b.

[38] *See, e.g.*, Michael Hill and Dan Swinhoe, *The 15 Biggest Data Breaches of the 21st Century*, CSO ONLINE (Nov. 8, 2022), https://www.csoonline.com/article/2130877/the-biggest-data-breaches-of-the-21st-century.html.

[39] https://www.usatoday.com/story/money/2024/07/18/data-breach-what-to-do/74441060007/.

[40] Lucy L. Thomson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012), available at https://lawcat.berkeley.edu/record/394088.

BREACH AND ENCRYPTION HANDBOOK, "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[41] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[42]

86.    "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures. . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[43]

87.    In a data breach like this, many failures laid the groundwork for the Breach.

88.    The FTC has published guidelines that establish reasonable data security practices for businesses.

89.    The FTC guidelines emphasize the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.[44]

90.    The FTC guidelines establish that businesses should protect the confidential information that they keep; properly dispose of personal information that is no longer

---

[41]*Id.* at 17.
[42]*Id.* at 28.
[43]*Id.*
[44] *Protecting Personal Information: A Guide for Business*, FTC, available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems.

91.     The FTC guidelines also recommend that businesses utilize an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating hacking attempts; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

92.     According to information and belief, Trinity failed to maintain many reasonable and necessary industry standards necessary to prevent a data breach, including the FTC's guidelines.

93.     Upon information and belief, Trinity also failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework, NIST Special Publications 800-53, 53A, or 800-171; the Federal Risk and Authorization Management Program (FEDRAMP); or the Center for Internet Security's Critical Security Controls (CIS CSC), which are well respected authorities in reasonable cybersecurity readiness.

94.     As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[45]

---

[45] *See* How to Protect Your Networks from RANSOMWARE, at 3, available at https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view.

95.    To prevent and detect ransomware attacks, Trinity could and should have implemented, as recommended by the Federal Bureau of Investigation, the following measures:

- Implement an awareness and training program.  Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless

25

absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[46]

96.      Further, Trinity could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**.   Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**.   Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

---

[46] *Id.* at 3–4.

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**.  Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**.  If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**.  Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[47]

---

[47] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), available at https://www.cisa.gov/news-events/news/protecting-against-ransomware.

28

97.    In addition, to prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Trinity could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

- **Secure internet-facing assets**

  - Apply latest security updates

  - Use threat and vulnerability management

  - Perform regular audit; remove privileged credentials

- **Thoroughly investigate and remediate alerts**

  - Prioritize and treat commodity malware infections as potential full compromise;

- **Include IT Pros in security discussions**

  - Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

- **Build credential hygiene**

  - Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

- **Apply principle of least-privilege**

  - Monitor for adversarial activities

  - Hunt for brute force attempts

29

- Monitor for cleanup of Event Logs

- Analyze logon events

- **Harden infrastructure**

  - Use Windows Defender Firewall

  - Enable tamper protection

  - Enable cloud-delivered protection

  - Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[48]

98.    Given that Trinity was storing the PII of thousands of individuals, Trinity could have and should have implemented all of the above measures to prevent and detect cyberattacks.

99.    Specifically, among other failures, Trinity had far too much confidential unencrypted information held on its systems.  Such PII should have been segregated into an encrypted system.[49]

100.    Moreover, it is a well-established industry standard practice for a business to dispose of confidential PII once it is no longer needed.

101.    The FTC, among others, has repeatedly emphasized the importance of disposing unnecessary PII, saying simply: "Keep sensitive data in your system only as long

---

[48] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/.

[49] *See, e.g.,* Adnan Raja, *How to Safeguard Your Business Data with Encryption*, FORTRA (Aug. 14, 2018), https://digitalguardian.com/blog/how-safeguard-your-business-data-encryption.

as you have a business reason to have it.  Once that business need is over, properly dispose of it.  If it's not on your system, it can't be stolen by hackers."[50]  Trinity, rather than following this basic standard of care, kept thousands of individuals' unencrypted PII indefinitely.

102.    In sum, the Data Breach could have readily been prevented through the use of industry standard network segmentation and encryption of all PII.

103.    Further, the scope of the Data Breach could have been dramatically reduced had Trinity utilized proper record retention and destruction practices.

### G. Plaintiff's Individual Experience.

*Plaintiff William D. Warner*

104.    Plaintiff Warner received a Notice of Data Breach Letter from Trinity informing him that his highly confidential Private Information was compromised in the Data Breach.[51]

105.    Defendants were in possession of Plaintiff's Private Information before, during, and after the Data Breach.

106.    Because of the Data Breach, there is no doubt Plaintiff Warner's highly confidential Private Information is in the hands of cybercriminals. Reason being, the Notice of Data Breach Letter from Trinity not only disclosed that an unauthorized third-party had

---

[50] *Protecting Personal Information: A Guide for Business*, FTC, *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf, at p. 6.

[51] Ex. 1.

accessed Trinity's systems, but BianLian confirmed itself that it had exfiltrated files containing highly sensitive PII.[52] BianLian also leaked stolen Private Information on the dark web. As such, Plaintiff Warner and the Class are at an imminent risk of identity theft and fraud.

107. As a result of the Data Breach, Plaintiff Warner has already expended hours of his time and has suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach, including investigating the Data Breach, investigating how best to ensure that he is protected from identity theft, and reviewing account statements, credit reports, and/or other information.

108. Plaintiff Warner places significant value on the security of his Private Information and does not readily disclose it. Plaintiff Warner has never knowingly transmitted unencrypted Private Information over the internet or any other unsecured source.

109. Plaintiff Warner has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such a risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the Private Information compromised by the Data Breach. Indeed, Trinity acknowledged the present and increased risk of future harm Plaintiff Warner, and the Class now face by offering temporary, non-automatic credit monitoring services to Plaintiff Warner and the Class.

---

[52] *Id.*

32

110.    Knowing that thieves intentionally targeted and stole his Private Information, including his Social Security number, and knowing that his Private Information is in the hands of cybercriminals has caused Plaintiff Warner great anxiety beyond mere worry.

111.    Plaintiff Warner has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains in the possession of Trinity, is protected, and safeguarded from future data breaches. Absent Court intervention, Plaintiff's and the Class's Private Information will be wholly unprotected and at-risk of future data breaches.

112.    Plaintiff Warner has suffered injuries directly and proximately caused by the Data Breach, including: (i) theft of his valuable Private Information; (ii) the imminent and certain impending injury flowing from anticipated fraud and identity theft posed by his Private Information being placed in the hands of cybercriminals; (iii) damages to and diminution in value of his Private Information that was entrusted to Defendants with the understanding that Defendants would safeguard this information against disclosure; (iv) loss of the benefit of the bargain with Defendants to provide adequate and reasonable data security—*i.e.*, the difference in value between what Plaintiff Warner should have received from Defendants and Defendants' defective and deficient performance of that obligation by failing to provide reasonable and adequate data security and failing to protect his Private Information; and (v) continued risk to his Private Information, which remains in the possession of Defendants and which is subject to further breaches so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information that was entrusted to Defendants.

33

## V.    CLASS ACTION ALLEGATIONS

113.    Plaintiff incorporates by reference all preceding paragraphs as if fully restated here.

114.    Plaintiff brings this action against Defendants on behalf of himself and all other individuals similarly situated under Federal Rule of Civil Procedure 23. Plaintiff asserts all claims on behalf of a nationwide class (the "Class") defined as follows:

> **All persons who were sent a Notice of Data Breach Letter
> from Trinity and/or an entity that used Trinity's services
> after the Data Breach.**

115.    Excluded from the Class is Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staff.

116.    Plaintiff reserves the right to amend the above definition or to propose subclasses in subsequent pleadings and motions for class certification.

117.    Plaintiff anticipates the issuance of notice setting forth the subject and nature of the instant action to the proposed Class. Upon information and belief, Defendants' own business records or electronic media can be utilized for the notice process.

118.    The proposed Class meets the requirements of Federal Rule of Civil Procedure 23.

119.    **Numerosity:** The proposed Class is so numerous that joinder of all members is impracticable.

120.    **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through Defendants' uniform misconduct. Defendants' inadequate data security gave rise to Plaintiff's claims and are identical to those that give rise to the claims of every other Class member because Plaintiff and each member of the Class had their sensitive PII compromised in the same way by the same conduct of Defendants.

121.    **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the Class; Plaintiff has retained counsel competent and highly experienced in data breach class action litigation; and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and their counsel.

122.    **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for members of the Class individually to effectively redress Defendants' wrongdoing. Even if Class members could afford such individual litigation, the Court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and

provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

123.    **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a.   Whether Defendants engaged in the wrongful conduct alleged herein;

b.   Whether Defendants failed to adequately safeguard Plaintiff's and the Class's PII;

c.   Whether Defendants owed a duty to Plaintiff and the Class to adequately protect their PII, and whether it breached this duty;

d.   Whether Defendants breached their duties to Plaintiff and the Class;

e.   Whether Trinity failed to provide adequate cybersecurity;

f.   Whether Rimrock failed to ensure Trinity had adequate data security before relinquishing control over Plaintiff and the Class's Private Information;

g.   Whether Trinity knew or should have known that its computer and network security systems were vulnerable to cyber-attacks;

h.   Whether Trinity was negligent in permitting unencrypted PII of vast numbers of individuals to be stored within its network;

i.   Whether Trinity was negligent in failing to adhere to reasonable retention policies, thereby greatly increasing the size of the Data Breach;

36

j. Whether Defendants breached implied contractual duties to Plaintiff and the Class to use reasonable care in protecting their PII;

k. Whether Trinity failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

l. Whether Defendants continue to breach duties to Plaintiff and the Class;

m. Whether Plaintiff and the Class suffered injury as a proximate result of Defendants' negligent actions or failures to act;

n. Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief; and

o. Whether Defendants' actions alleged herein constitute gross negligence, and whether Plaintiff and Class Members are entitled to punitive damages.

## VI.    CAUSES OF ACTION

### COUNT I
### NEGLIGENCE/NEGLIGENCE *PER SE*
### (On Behalf of Plaintiff and the Nationwide Class against Trinity)

123. Plaintiff re-alleges and incorporates by reference paragraphs 1–122 above as if fully set forth herein and brings this claim against Trinity.

124. Defendants required Plaintiff and Class Members to submit, directly or indirectly, personal, confidential Private Information to Defendants as a condition of receiving services and benefits.

37

125.    The Private Information included Plaintiff's and Class Members' names, dates of birth and Social Security numbers.

126.    Trinity had full knowledge of the sensitivity of the Private Information to which it was entrusted, and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information was wrongfully disclosed to unauthorized persons or given to entities with inadequate data security.

127.    Trinity had duties to Plaintiff and each Class Member to exercise reasonable care in holding, safeguarding, and protecting their Private Information.

128.    Plaintiff and Class Members were the foreseeable victims of any inadequate safety and security practices by Trinity.

129.    Plaintiff and Class Members had no ability to protect their Private Information in Trinity's possession.

130.    By collecting and storing Plaintiff's and Class Members' Private Information, Trinity had a duty of care to use reasonable means to secure and safeguard it, to prevent disclosure of the information, and to safeguard the Private Information from theft.

131.    Trinity's duty of care obligated it to implement processes by which it could detect if Private Information was exposed to unauthorized actors.

132.    Trinity also owed a duty to Plaintiff and Class Members to: (i) provide data security consistent with industry standards and legal and regulatory requirements; and (ii) ensure that its systems and networks and the personnel responsible for them adequately protected Plaintiff's and Class Members' Private Information.

38

133. Trinity had a duty to employ reasonable security measures under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

134. Pursuant to the FTC Act, Trinity had a duty to provide adequate systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

135. Trinity breached its duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information, by failing to encrypt or timely delete the Private Information from its systems, and by failing to timely or adequately notify or warn Plaintiff and Class Members about the Data Breach.

136. Trinity's violations of the FTC Act, as described herein, directly caused and/or were a substantial factor in the Data Breach and resulting injuries to Plaintiff and Class Members.

137. Plaintiff and Class Members are within the class of persons the FTC Act and was intended to protect.

138. The type of harm that resulted from the Data Breach was the type of harm the FTC Act was intended to guard against.

139. Trinity's failure to comply with the FTC Act is negligence *per se.*

140. Trinity's duties to use reasonable care in protecting Plaintiff's and Class Members' Private Information arose not only because of the statutes and regulations

described above, but because Trinity is bound by industry standards to protect and secure such Private Information.

141. Trinity breached its duties and was negligent by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information from unauthorized disclosure. The specific negligent acts and omissions committed by Trinity includes, but is not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Private Information;

b. Failing to adequately train employees on proper cybersecurity protocols;

c. Failing to adequately monitor the security of its information technology networks and systems;

d. Failure to periodically ensure that its network systems had plans in place to maintain reasonable data security safeguards;

e. Allowing unauthorized access to Plaintiff's and Class Members' Private Information; and

f. Failing to timely notify Plaintiff and Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

142. But for Trinity's wrongful and negligent breaches of its duties owed to Plaintiff and Class Members, the Data Breach would not have occurred or at least would

40

have been mitigated, Plaintiff's and Class Members' Private Information would not have been compromised, and Plaintiff's and Class Members' injuries would have been avoided.

143.    It was foreseeable that Trinity's failures to use reasonable measures to protect Plaintiff's and Class Members' Private Information would injure Plaintiff and Class Members.  Further, the breach of security was reasonably foreseeable to Trinity given the known high frequency of cyberattacks and data breaches in Trinity's industry.

144.    It was therefore foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' Private Information would cause them one or more types of injuries.

145.    As a direct and proximate result of Trinity's negligence, Plaintiff and Class Members have suffered and will suffer injuries and damages, including but not limited to (a) invasion of privacy; (b) lost or diminished value of their Private Information; (c) actual identity theft and fraud; (d) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (e) loss of benefit of their bargain; and (f) the continued and certainly increased risk to their Private Information, which remains (i) unencrypted and available for unauthorized third parties to access and abuse; and (ii) in Trinity's possession and subject to further unauthorized disclosures so long as Trinity fails to undertake appropriate and adequate measures to protect it.

146.    As a direct and proximate result of Trinity's negligence, Plaintiff and Class Members have suffered and will continue to suffer injuries and/or harm, including but not

41

limited to anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

147.   Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

## COUNT II
## BREACH OF IMPLIED CONTRACT
### (On behalf of Plaintiff and the Nationwide Class against all Defendants)

148.   Plaintiff re-alleges and incorporates by reference paragraphs 1–122 above as if fully set forth herein and brings this claim against all Defendants.

149.   Defendants required Plaintiff and Class Members to provide and entrust their Private Information to Defendants as a condition of obtaining Defendants' services and/or benefits.

150.   When Plaintiff and Class Members provided their Private Information to Defendants, they entered into implied contracts with Defendants pursuant to which Defendants agreed, as manifested through their conduct, to safeguard and protect such Private Information and to timely and accurately notify Plaintiff and Class Members if and when their Private Information was breached and compromised.

151.   Specifically, Plaintiff and Class Members entered into valid and enforceable implied contracts with Defendants when they agreed to provide their Private Information and/or payment to Defendants, and Defendants agreed to collect, maintain, and profit from that Private Information.

152.   The valid and enforceable implied contracts that Plaintiff and Class Members entered into with Defendants included Defendants' promises to protect Private Information

they collected from Plaintiff and Class Members against unauthorized disclosures.  Plaintiff and Class Members provided this Private Information in reliance on Defendants' promises.

153.    Under the implied contracts, Defendants promised and were obligated to protect Plaintiff's and Class Members' Private Information provided to obtain Defendants' services and/or benefits.  In exchange, Plaintiff and Class Members agreed to provide Defendants with their Private Information.

154.    Defendants promised and warranted to Plaintiff and Class Members, through privacy documents and conduct, to maintain the privacy and confidentiality of the Private Information they collected from Plaintiff and Class Members and to keep such information safeguarded against unauthorized access and disclosure.

155.    Defendants' adequate protection of Plaintiff's and Class Members' Private Information was a material aspect of these implied contracts with Defendants.

156.    Defendants solicited and invited Plaintiff and Class Members to provide their Private Information as part of Defendants' regular business practices.  Plaintiff and Class Members accepted Defendants' offers and provided their Private Information to Defendants.

157.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendants' data security practices complied with industry standards and relevant laws and regulations, including the FTC Act.

158.    Plaintiff also reasonably believed that Defendants would properly vet and inquire into the data security of any vendor they used to ensure their Private Information was adequately protected and not susceptible to data breaches.

43

159.    Plaintiff and Class Members who contracted with Defendants provided their Private Information to Defendants and reasonably believed and expected that Defendants would adequately employ adequate data security, and utilize vendors with adequate data security, to protect their Private Information.  However, Defendants failed to do so.

160.    A meeting of the minds occurred when Plaintiff and Class Members agreed to, and did, provide their Private Information to Defendants and agreed Defendants would receive payment for and benefit from, amongst other things, the protection of their Private Information.

161.    Plaintiff and Class Members performed their obligations under the contracts when they provided their Private Information and/or payment to Defendants.

162.    Defendants materially breached their contractual obligations to protect the Private Information they required Plaintiff and Class Members to provide when that Private Information was unauthorizedly disclosed in the Data Breach due to Defendants' inadequate data security measures and procedures and their failure to ensure their vendors had adequate data security measures and procedures.

163.    Defendants materially breached their contractual obligations to deal in good faith with Plaintiff and Class Members when they failed to take adequate precautions to prevent the Data Breach, and when they failed to timely or adequately notify Plaintiff and Class Members about the Data Breach.

164.    The Data Breach was a reasonably foreseeable consequence of Defendants' conduct, by acts of omission or commission, in breach of these implied contracts with Plaintiff and Class Members.

44

165. As a result of Defendants' failures to fulfill the data security protections promised in these contracts, Plaintiff and Class Members did not receive the full benefit of their bargains with Defendants and instead received services of a diminished value compared to that described in the implied contracts. Plaintiff and Class Members were therefore damaged in an amount at least equal to the difference in the value of the services with data security protection they paid for and that which they received.

166. Had Defendants disclosed that their data security procedures were inadequate or that they did not adhere to industry-standard for cybersecurity, neither Plaintiff, Class Members, nor any reasonable person would have contracted with Defendants.

167. Similarly, had Rimrock disclosed that it would be using a vendor with inadequate data security procedures they would not have contracted with Defendants.

168. Plaintiff and Class Members would not have provided and entrusted their Private Information to Defendants in the absence of the implied contracts between them and Defendants.

169. Plaintiff and Class Members fully performed their obligations under their implied contracts with Defendants.

170. Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or restitution damages, in an amount to be proven at trial, due to Defendants' breach of implied contract.

## COUNT III
## BREACH OF THIRD-PARTY BENEFICIARY CONTRACT
## <u>(On Behalf of Plaintiff and the Nationwide Class against Defendant Trinity)</u>

171.    Plaintiff re-alleges and incorporates by reference paragraphs 1–122 above as if fully set forth herein and brings this claim solely against Trinity.

172.    This Count is alleged in the alternative to Count II above.

173.    Trinity entered into uniform written contracts with its clients, including Rimrock, to provide services in the oil and gas industry.

174.    Pursuant these contracts, Trinity received from its clients and maintained Plaintiff's and Class Members' Private Information in the course of performing its contractual services, which it could not perform without receiving and maintaining such Private Information.

175.    Pursuant to these contracts, Trinity's clients agreed to provide Trinity with compensation and Plaintiff's and Class Members' Private Information.

176.    In exchange, Trinity agreed, in part, to implement adequate data security measures to safeguard Plaintiff's and Class Members' Private Information from unauthorized disclosure, and to timely notify Plaintiff and Class Members of the Data Breach.

177.    Trinity was required by statute and regulation to have contracts with its clients that required Trinity to implement and maintain reasonable security procedures and practices to protect its clients' customers'—Plaintiff and Class Members—Private Information from unauthorized access, use, or disclosure.

178.    The relevant statutes and regulations obligating Trinity to promise by contract to use reasonable data security for Plaintiff's and Class Members' Private Information create a class of intended beneficiaries whose members are implied into such agreements by operation of law.  Plaintiff and Class Members are the intended beneficiaries of the contracts that Trinity entered into with Plaintiff's and Class Members' benefit plans to satisfy these statutory and regulatory requirements.

179.    Upon information and belief, Trinity's contracts with its clients each contained a provision requiring Trinity to implement and maintain reasonable security procedures and practices appropriate to the nature of Private Information Trinity collected, to protect the Private Information from unauthorized access, use, or disclosure.

180.    These contracts between Trinity and its clients were made expressly for the benefit of Plaintiff and Class Members as the intended third-party beneficiaries of these contracts.

181.    Trinity knew Plaintiff and Class Members were involved and would benefit from the transactions that were subject to these contracts.

182.    Trinity knew that if it breached its contractual obligation to adequately safeguard its clients' customers' Private Information, its clients' customers—Plaintiff and Class Members—would be harmed.

183.    Trinity breached these contracts with Rimrock by, among other acts and omissions, (a) failing to use reasonable data security measures, (b) failing to implement adequate protocols and employe training sufficient to protect Plaintiff's and Class

47

Members' Private Information from unauthorized disclosure, and (b) failing to promptly or adequately notify Plaintiff and Class Members of the Data Breach.

184.    As a direct and proximate result of Trinity's breaches of these contracts, Plaintiff and Class Members have suffered and will continue to suffer injuries as set forth herein and are entitled to damages sufficient to compensate for the losses they sustained.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Nationwide Class against all Defendants)**

185.    Plaintiff re-alleges and incorporates by reference paragraphs 1–122 above as if fully set forth herein and brings this claim against all Defendants.

186.    Plaintiff pleads this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein, to the extent Plaintiff and Class Members may not have an adequate remedy at law against Defendants.

187.    Plaintiff and Class Members conferred a monetary benefit on Defendants. Specifically, they provided their Private Information to Defendants. In exchange, Plaintiff and Class Members should have had their Private Information protected with adequate data security. Without the collection and receipt of Plaintiff's and the Class's Private Information, Defendants would not be able to provide services and would be unable to obtain revenue.

188.    Defendants knew Plaintiff and Class Members conferred a benefit upon it and accepted and retained that benefit by accepting and retaining the Private Information entrusted to it, and indeed, generating revenue from doing so. Defendants profited from

48

Plaintiff's retained data and used Plaintiff's and Class Members' Private Information for business purposes.

189. Defendants failed to secure Plaintiff's and Class Members' Private Information and, therefore, did not fully compensate Plaintiff or Class Members for the value that their Private Information provided.

190. Defendants acquired the Private Information through inequitable means as they failed to investigate and/or disclose the inadequate data security practices as alleged herein.

191. Trinity enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information.

192. Rimrock enriched itself by saving the costs it reasonably should have expended on a vendor with adequate data security measures to secure Plaintiff's and Class Members' Private Information.

193. Instead of providing a reasonable level of security (or a vendor with a reasonable level of security) that would have prevented the hacking incident, Defendants calculated to increase their own profits at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures (and vendors) and diverting those funds to their own pockets. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' decisions to prioritize their own profits over the requisite security of customers' Private Information.

194. Under the circumstances, it would be unjust for Defendants to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon them.

195. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will suffer injuries and damages as set forth herein.

196. Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

## COUNT V
## DECLARATORY JUDGMENT
## (On behalf of Plaintiff and the Nationwide Class against Trinity)

197. Plaintiff re-alleges and incorporates by reference paragraphs 1–122 above as if fully set forth herein and brings this claim against Trinity.

198. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary supplemental relief.  The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

199. In the fallout of the Data Breach, a controversy has arisen about Trinity's duties to use reasonable data security for the Private Information it collects and maintains.

200. On information and belief, Trinity's actions were—and still are—inadequate and unreasonable. Plaintiff and Class Members continue to suffer injuries from the ongoing threat of fraud and identity theft due to Trinity's inadequate data security measures.

201. Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring as follows:

a.      Trinity owed—and continues to owe—a legal duty to use reasonable data security to secure the Private Information entrusted to it;

b.      Trinity has a duty to notify impacted individuals of the Data Breach under common law, Section 5 of the FTC Act;

c.      Trinity breached, and continues to breach, its duties by failing to use reasonable measures to protect the Private Information entrusted to it from unauthorized access, use, and disclosure; and

d.      Trinity's breaches of its duties caused—and continues to cause—injuries to Plaintiff and Class Members.

202.   The Court should also issue injunctive relief requiring Trinity to use adequate security consistent with industry standards to protect the Private Information entrusted to it.

203.   If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injuries and lack an adequate legal remedy if a second data breach occurs.  And if a second breach occurs, Plaintiff and Class Members will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full, and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages, while warranted for out-of-pocket damages and other legally quantifiable and provable damages, cannot cover the full extent of Plaintiff's and Class Members' injuries.

204.   If an injunction is not issued, the resulting hardship to Plaintiff and Class Members far exceeds the minimal hardship that Trinity could experience if an injunction is issued.

51

205.    An injunction would benefit the public by preventing another data breach—

thus preventing further injuries to Plaintiff, Class Members, and the public at large.

**COUNT VI**
**NEGLIGENT HIRING AND SUPERVISION**
**(On behalf of Plaintiff and the Nationwide Class against Rimrock)**

206.    Plaintiff re-alleges and incorporates by reference paragraphs 1–122 above as

if fully set forth herein and brings this claim against Rimrock.

207.    At all relevant times, Trinity was Rimrock's agent.

208.    Rimrock granted Trinity access to the Private Information of Plaintiff and the

Class without properly vetting Trinity, inquiring about/investigating Trinity's data security,

training Trinity, advising Trinity of its duties owed to Plaintiff and the Class, and/or

advising Trinity of the confidential nature of Plaintiff's and the Class's Private Information.

209.    Rimrock negligent and failed to exercise the requisite standard of care in the

hiring, supervision, and retention of Trinity, who disclosed Plaintiff's and the Class's

Private Information without authorization and caused the damages delineated herein by

virtue of the Data Breach.

210.    At all times relevant hereto, Rimrock owed a duty to Plaintiff and the Class

to train and supervise its agents and third parties handling sensitive Private Information in

its possession to ensure they recognized the duties owed to Plaintiff and the Class to keep

their Private Information safe from data breaches.

211.    Rimrock owed a duty to Plaintiff and the Class to ensure Trinity had adequate

data security, procedures, and protocols sufficient to protect Plaintiff's and the Class's

52

Private Information from data breaches **prior** to hiring Trinity.

212.    Rimrock also owed a continuing duty to Plaintiff and the Class to ensure Trinity continued to employ adequate data security, procedures, and protocols sufficient to protect Plaintiff's and the Class's Private Information from data breaches **after** hiring Trinity.

213.    Rimrock breached this duty by failing to ensure Trinity possessed the requisite data security, procedures, practices, infrastructure, and protocols to protect Plaintiff's and the Class's Private Information from data breaches prior to hiring Trinity and while Trinity rendered services to Rimrock.

214.    Rimrock was on notice of the importance of data security because of well publicized data breaches occurring throughout the United States. Despite knowledge of prior data breaches, Rimrock failed to ensure Trinity possessed the adequate security posture to protect Plaintiff's and the Class's Private Information from unauthorized disclosure.

215.    Rimrock knew or should have known that the failure to ensure Trinity employed adequate data security, procedures, and protocols would create an unreasonable risk of danger to persons and property.

216.    As a direct and proximate result of Rimrock's  breach of its duties, and its negligent hiring, training, selection, and supervision, of Trinity, which resulted in the disclosure of Plaintiff's and Class Members' confidential Private Information in the Data Breach, Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity

theft, loss of privacy, diminution in value of their Private Information, and actual misuse of their Private Information.

217. Rimrock was advised of the Data Breach, but continued to employ Trinity, putting Plaintiff and the Class at risk of more data breaches in the future.

218. The acts and omissions of Rimrock in negligently hiring, retaining, training, and/or supervising Trinity are such as to show gross negligence and reckless disregard for the safety of others and, therefore, punitive damages are appropriate.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment against Defendants as follows:

a. An order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b. A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including compensatory damages, punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

54

d.  An order requiring Defendants to pay the costs involved in notifying the Class Members about the judgment and administering the claims process;

e.  A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

f.  An award of such other and further relief as this Court may deem just and proper.

## VIII.  <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all appropriate issues raised in this Class Action Complaint.

Dated:  March 7, 2025                     Respectfully submitted,

*/s/: William B. Federman*
William B. Federman
Kennedy M. Brian
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
T: (405) 235-1560
F: (405) 239-2112
E: wbf@federmanlaw.com
E: kpb@federmanlaw.com

Larry D. Lahman
OBA No. 5166
(*Admission Application Forthcoming*)
**MITCHELLDECLERCK**
202 West Broadway Ave.
Enid, OK 73701
Ph: 580-747-3114
E: ldl@mdpllc.com

55