**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| **WILLIAM D. WARNER, AMBER LACY, RILEY LANGDON, WHITNEY PAIGE PUTNAM, STEPHEN KYLE VOSS**, and **TODD WILLIFORD**, on behalf of themselves, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**TRINITY PETROLEUM MANAGEMENT, LLC, RIMROCK RESOURCE OPERATING, LLC, CONFLUENCE DJ, LLC**, and **VALIDUS ENERGY II MIDCON, LLC**,<br><br>Defendants. | Case No. 1:25-cv-00748-SKC<br><br>Hon. Judge S. Kato Crews |

**PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

i

## TABLE OF CONTENTS

I.    FACTUAL AND PROCEDURAL BACKGROUND ............................................... 1

II.   SUMMARY OF SETTLEMENT TERMS ........................................................... 3

   A.   Settlement Class. ..................................................................................... 3

   B.   Settlement Benefits. ................................................................................ 3

   C.   Service Awards, Attorneys' Fees, and Litigation Expenses. ............................ 5

III.  ARGUMENT .................................................................................................. 5

   A.   The Court Should Certify the Settlement Class. .............................................. 5

   B.   The Court Should Find the Settlement is Fair, Reasonable, and Adequate. .... 8

      1.   Rule 23(e)(2)(A): the Proposed Class is Adequately Represented. ................ 9

      2.   Rule 23(e)(2)(B) and *Rutter* Factor 1: the Proposed Settlement was Fairly

      and Honestly Negotiated at Arm's Length. ....................................................... 10

      3.   Rule 23(e)(2)(C)(i) and *Rutter* Factor 2: Serious Questions of Law and Fact

      Exist, Placing the Ultimate Outcome of the Litigation in Doubt. ...................... 10

      4.   *Rutter* Factor 3: The Value of an Immediate Recovery Outweighs the Mere

      Possibility of Future Relief After Protracted and Expensive Litigation. ........... 11

      5.   *Rutter* Factor 4, Rule 23(e)(2)(C)(ii), and Rule 23(e)(2)(D): The Parties and

      their Counsel Aver that the Settlement is Fair and Reasonable, and the Method

      of Distributing Relief is Equitable and Effective. ............................................. 12

      6.   Rule 23(e)(2)(C)(iii): The Proposed Attorneys' Fees are Reasonable. ........... 14

IV.  THE NOTICE PROGRAM COMPLIES WITH DUE PROCESS ....................... 14

V.   CONCLUSION ............................................................................................... 15

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Beasley v. TTEC Servs. Corp.*,

   No. 22-cv-00097-PAB-STV, 2023 U.S. Dist. LEXIS 81211 (D. Colo. May 9, 2023)

   .............................................................................................................................. passim

*Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*,

   888 F.3d 455 (10th Cir. 2017) ................................................................................ 14

*Gaston v. Fabfitfun, Inc.*,

   No. 2:20-cv-09534-RGK-E, 2021 U.S. Dist. LEXIS 250695 (C.D. Cal. Dec. 9, 2021)

   .................................................................................................................................. 11

*Gordon v. Chipotle Mexican Grill, Inc.*,

   No. 17-cv-01415-CMA-SKC, 2019 U.S. Dist. LEXIS 215430 (D. Colo. Dec. 16, 2019)

   .................................................................................................................................. 11

*Harper v. C.R. Eng., Inc.*,

   746 Fed. Appx. 712 (10th Cir. 2018)........................................................................ 8

*Hashemi v. Bosley, Inc.*,

   No. CV 21-946 PSG (RAOx), 2022 U.S. Dist. LEXIS 210946 (C.D. Cal. Nov. 21,

   2022) ........................................................................................................................ 11

*In re Blackbaud, Inc., Customer Data Breach Litig.*,

   No. 3:20-mn-02972-JFA, 2024 U.S. Dist. LEXIS 86740 ....................................... 11

*In re Molycorp, Inc. Sec. Litig.*,

 No. 12-cv-00292-RM-KMT, 2017 U.S. Dist. LEXIS 215174 (D. Colo. Feb. 15, 2017)

 .................................................................................................................. 10

*Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*,

 No. 09-cv-01543-REB-KMT, 2010 U.S. Dist. LEXIS 144366 (D. Colo. Dec. 22, 2010)

 .................................................................................................................. 14

*Rex v. Owens ex rel St. of Okla.*,

 585 F.2d 432 (10th Cir. 1978) ................................................................. 6

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,

 314 F.3d 1180 (10th Cir. 2002) .......................................................... 7, 9

**<u>Rules</u>**

Fed. R. Civ. P. 23 ............................................................................. passim

**<u>Treatises</u>**

Federal Judicial Center, *Manual for Complex Litigation* § 21.632 (4th ed. 2004) ..... 5

Plaintiffs William D. Warner, Amber Lacy, Riley Langdon, Whitney Paige Putnam, Stephen Kyle Voss, and Todd Williford (collectively, "Plaintiffs"), individually, and on behalf of all others similarly situated, respectfully move pursuant to Federal Rule of Civil Procedure ("Rule") 23(e), for preliminary approval of a class action settlement (the "Settlement") between themselves and Defendants Trinity Petroleum Management, LLC ("Trinity"), Rimrock Resource Operating, LLC ("Rimrock"), Confluence DJ, LLC ("Confluence"), and Validus Energy II Midcon, LLC ("Validus") (collectively, "Defendants") (together with Plaintiffs, the "Parties").[1] The Settlement, if approved, will resolve the claims asserted by Plaintiffs and will provide meaningful monetary and non-monetary relief to Settlement Class Members whose personally identifiable information ("PII") may have been compromised in a data breach. For the reasons stated below, preliminary approval should be GRANTED.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Trinity provides accounting services to businesses in the oil and gas industry, including Rimrock, Confluence, and Validus. (SA, ¶ 1). Plaintiffs and Settlement Class Members are oil and gas interest holders associated with companies that outsourced accounting services to Trinity. (*Id.* ¶ 2).

On or about October 14, 2024, Trinity became aware that an unauthorized actor accessed certain files stored within its network that contained the PII of

---

[1] Unless otherwise noted herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement ("SA") attached as **Exhibit 4** to the Declaration of Class Counsel in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Class Counsel Decl."), submitted concurrently herewith.

Plaintiffs and the Settlement Class (the "Data Security Incident"). (*Id.* ¶ 4). After an investigation, Trinity determined an unauthorized actor gained access to its computer systems between October 10, 2024, and October 14, 2024. (*Id.* ¶ 5). The PII potentially accessed included names, addresses, and Social Security numbers. (*Id.* ¶¶ 3–6). Trinity sent Notice Letters to potentially impacted individuals on or around February 13, 2025 and March 10, 2025. (*Id.* ¶ 4).

After receiving Notice Letters, Plaintiffs filed separate putative class actions, which were consolidated into the above-captioned matter. (*Id.* ¶¶ 7–8). On June 30, 2025, Plaintiffs Warner, Lacy, Langdon, Voss, and Putnam filed a Consolidated Class Action Complaint. (*Id.* ¶ 9). The Consolidated Complaint added Todd Williford as a Plaintiff and Confluence and Validus as Defendants. (*Id.*). The Consolidated Complaint asserted the following claims for relief: (i) negligence; (ii) negligence *per se*; (iii) breach of implied contract; (iv) breach of third-party beneficiary contract; (v) unjust enrichment; (vi) declaratory judgment; and (vii) negligent selection, hiring, or retention. (*Id.*). Thereafter, Trinity and Rimrock filed Motions to Dismiss and the Parties scheduled a mediation. (*Id.* ¶¶ 10–11).

Prior to engaging in mediation, Plaintiffs sought and obtained informal discovery on a variety of topics, including: (i) the details of the Data Security Incident; (ii) how many individuals were potentially impacted by the Data Security Incident and their geographic location; (iii) the types of PII potentially exposed in the Data Security Incident; (iv) the remedial measures implemented by Trinity after the Data Security Incident; (v) the insurance coverage applicable to the Data Security Incident;

2

and (vi) the relationship between Trinity and the other Defendants. (*Id.* ¶ 13).

On November 21, 2025, Plaintiffs and Trinity, on behalf of Defendants, engaged in a full-day mediation with an experienced data privacy mediator—John DeGroote, Esq. of DeGroote Partners. (*Id.* ¶ 11). At this mediation, Plaintiffs and Trinity engaged in hard-fought settlement negotiations and were able to reach an agreement on some of the Settlement's terms. (*Id.*). On December 18, 2025, Plaintiffs and Trinity engaged in a second half-day mediation with Mr. DeGroote and were ultimately able to reach an agreement in principle on all material terms of the Settlement. (*Id.* ¶ 12). Following further arm's-length negotiations between experienced counsel, the Parties finalized the Settlement Agreement. (*Id.*).

## II. SUMMARY OF SETTLEMENT TERMS

### A. Settlement Class.

The Settlement Class is defined as:

> [A]ll persons residing in the United States who were notified by Trinity that their Private Information was potentially accessed and/or exfiltrated during the Data Security Incident impacting Trinity's computer systems between October 10, 2024, and October 14, 2024.

(*Id.* ¶ 52). Excluded from the Settlement Class are: (i) all persons who are directors and officers of Defendants; (ii) governmental entities; and (iii) the Judge assigned to the Action, that Judge's immediate family, and Court staff. (*Id.*). The Settlement Class is comprised of approximately 46,659 individuals. (*Id.*).

### B. Settlement Benefits.

The Settlement Agreement provides meaningful relief in the form of significant monetary and non-monetary benefits to Settlement Class Members who choose to

take advantage of the Settlement. Most importantly, the Settlement is "uncapped" which means that all timely and valid claims will be paid by Trinity. (*Id.* ¶¶ 58, 85).

*Documented Losses.* Settlement Class Members may submit a Claim for up to $5,000.00 per Settlement Class Member for unreimbursed losses fairly traceable to the Data Security Incident. (*Id.* ¶¶ 59(a)(i)–(ii)).

*Lost Time.* Settlement Class Members may also submit a Claim for reimbursement for time spent remedying issues related to the Data Security Incident at a rate of $25.00 per hour, for up to four (4) hours ($100.00 total). (*Id.* ¶ 59(b)).

*Alternative Cash Payment.* In lieu of submitting a Claim for Documented Losses or Lost Time, Settlement Class Members may submit a Claim for a one-time cash payment of $55.00. (*Id.* ¶ 59(c)).

*Credit Monitoring.* Regardless of the Cash Payment selected, all Settlement Class Members may submit a Claim for three (3) years of one-bureau credit monitoring and identity theft protection services, which will include at least $1,000,000.00 in identity theft insurance. (*Id.* ¶ 60).

*Business Practice Changes.* Additionally, Plaintiffs received assurances that Trinity has either undertaken or will undertake reasonable steps to further secure its computer systems and environment. (*Id.* ¶ 61). Trinity will also provide a confidential declaration setting forth: (i) the enhanced data security measures it has implemented since the Data Security Incident; (ii) the approximate cost of the enhanced data security measures it has implemented since the Data Security Incident; and (iii) the estimated cost of maintaining the enhanced data security

4

measures over the next three (3) years. (*Id.*).

### C. Service Awards, Attorneys' Fees, and Litigation Expenses.

Pursuant to the terms of the Settlement, Class Counsel will apply to the Court for issuance of Service Awards in the amount of $2,500.00 per Plaintiff, ($15,000.00 total). (*Id.* ¶ 93). Class Counsel will also apply for an award of reasonable attorneys' fees and costs not to exceed $350,000.00. (*Id.* ¶ 94). These requests will be fully briefed in Plaintiffs' forthcoming Motion for Attorneys' Fees, Costs, and Service Awards and will not diminish the benefits available to the Settlement Class. (*Id.* ¶¶ 92, 94).

### III.    ARGUMENT

Court approval is required for class action settlements. Fed. R. Civ. P. 23(e). Settlement approval occurs in two (2) stages: (i) preliminary approval; and (ii) final approval. Federal Judicial Center, *Manual for Complex Litigation* § 21.632 (4th ed. 2004). "In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement. *Beasley v. TTEC Servs. Corp.*, No. 22-cv-00097-PAB-STV, 2023 U.S. Dist. LEXIS 81211, at *3 (D. Colo. May 9, 2023). "In the second stage, after notice is given to the putative class, the Court holds a fairness hearing at which it will address (1) any timely objections to the treatment of this litigation as a class action, and (2) any objections to the fairness, reasonableness, or adequacy of the settlement terms." *Id.*

### A. The Court Should Certify the Settlement Class.

First, the Court must determine if the Settlement Class can be certified. "A

district court may certify a class action if the proposed class satisfies the prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three types of classes identified in Rule 23(b)." *Beasley*, 2023 U.S. Dist. LEXIS 81211, at \*4–5. Here, each of Rule 23(a) requirements and Rule 23(b)(3)'s requirements are met with respect to the Settlement Class, posing no barrier to preliminary approval.

*Numerosity.* Rule 23(a)(1) requires that a settlement class be "so numerous that joinder of all class members is impracticable." "Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class." *Rex v. Owens ex rel St. of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978). Therefore, because the Settlement Class is comprised of approximately 46,659 individuals, it is sufficiently numerous.

*Commonality.* Rule 23(a)(2) requires "questions of law or fact common to the class." Here, all Settlement Class Members assert their PII was compromised in the same Data Security Incident. As such, their claims will involve numerous common questions of law and fact that will be resolved in the same way for all Settlement Class Members. Therefore, commonality is met. *See Beasley*, 2023 U.S. Dist. LEXIS 81211, at \*12 (finding commonality satisfied in data breach case with similar facts).

*Typicality.* Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Here, there are no material differences between the claims of Plaintiffs and the Settlement Class Members. Plaintiffs allege their PII was exposed in the same Data Security Incident impacting Settlement Class Members due to Defendants' uniform and deficient data

6

security practices. As such, typicality is satisfied.

***Adequacy of Representation.*** Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." In assessing adequacy, courts evaluate whether: (i) the named plaintiffs and their counsel have any conflicts of interests with other class members; and (ii) the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (citation omitted). Here, Plaintiffs and Class Counsel do not have any antagonistic interests the Settlement Class. (Class Counsel Decl., ¶ 19). Rather, their interests are aligned with the Settlement Class. (*Id.*). Moreover, Plaintiffs and Class Counsel have vigorously represented the Settlement Class to achieve a settlement that will deliver meaningful relief. (*See id.* ¶¶ 17–18). Accordingly, adequacy is satisfied.

***Predominance.*** Predominance requires that questions of law or fact common to class members must predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). Predominance is satisfied here because the common questions include: (i) whether Defendants had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's PII; and (ii) whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the PII compromised in the Data Security Incident. Because the common questions of law and fact depend upon the conduct of Defendants, these questions predominate because they are unaffected by the particularized conduct of individual Settlement Class Members. Therefore, predominance is satisfied.

*Superiority.* Superiority requires that the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). For most of the Settlement Class Members, their individual damages are likely too small to warrant individual litigation, particularly because data breach litigation involves complex technical issues and expert testimony that makes litigation costly. Further, when certifying a class for settlement purposes, Rule 23(b)(3)(D)—whether the proposed class would present intractable management problems—is irrelevant. *See Harper v. C.R. Eng., Inc.*, 746 Fed. Appx. 712, 720 (10th Cir. 2018). Thus, superiority is satisfied.

### B. The Court Should Find the Settlement is Fair, Reasonable, and Adequate.

"If the proposed settlement class satisfies the requirements of Rules 23(a) and (b), then the Court must separately evaluate whether the settlement agreement is 'fair, reasonable, and adequate' under Rule 23(e)." *Beasley*, 2023 U.S. Dist. LEXIS 81211, at *6 (citation omitted). To determine whether a settlement is fair, reasonable, and adequate Courts consider whether: (i) "the class representatives and class counsel have adequately represented the class"; (ii) the settlement "was negotiated at arm's length"; (iii) "the relief provided for the class is adequate"; and (iv) the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)–(D).[2] When assessing the adequacy of the relief provided, Courts also

---

[2] Rule 23(e)(C)(iv) and Rule 23(e)(C)(3) also require the identification of any additional agreements related to the settlement. Class Counsel represent there are no agreements related to the Settlement other than those reflected in the Settlement

consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv). Lastly, the Tenth Circuit considers the following factors: "(1) whether the proposed settlement was fairly and honestly negotiated, (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt, (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter & Wilbanks Corp.*, 314 F.3d at 1188 (the "*Rutter* Factors"). Here, the Settlement satisfies all applicable factors and is fair, reasonable, and adequate.

### 1. Rule 23(e)(2)(A): the Proposed Class is Adequately Represented.

The Class is adequately represented by Class Counsel and Plaintiffs. Class Counsel have effectively represented the class by: (i) fully investigating the facts and claims; (ii) preparing the complaints; (iii) requesting and reviewing informal discovery; and (iv) participating in two (2) mediation sessions overseen by a highly respected mediator. (Class Counsel Decl., ¶¶ 7–9, 17). Similarly, Plaintiffs have demonstrated their adequacy by: (i) selecting well-qualified counsel; (ii) providing information and documents to their counsel to permit investigation and development

---

Agreement itself and an agreement with Simpluris to perform notice and settlement administration. (Class Counsel Decl., ¶ 16).

of the complaints; (iii) being available as needed throughout the litigation; (iv) agreeing to participate in extensive discovery if needed; and (iv) monitoring the litigation. (*Id.* ¶ 18). Thus, this factor weighs in favor of preliminary approval.

### 2. Rule 23(e)(2)(B) and *Rutter* Factor 1: the Proposed Settlement was Fairly and Honestly Negotiated at Arm's Length.

The Settlement was negotiated at arm's length, without collusion, and with the assistance of a highly qualified and respected mediator, Mr. DeGroote. (*Id.* ¶ 7). Prior to engaging in mediation, Plaintiffs sought and obtained informal discovery on a variety of topics which they thoroughly evaluated to assess the strengths and weaknesses of the case. (*Id.* ¶ 8). The fact that the Settlement was achieved through well-informed, neutrally supervised negotiations weighs in favor of granting preliminary approval. *See In re Molycorp, Inc. Sec. Litig.*, No. 12-cv-00292-RM-KMT, 2017 U.S. Dist. LEXIS 215174, at *13 (D. Colo. Feb. 15, 2017) ("Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved."); *Beasley*, 2023 U.S. Dist. LEXIS 81211, at *22–23 (similar).

### 3. Rule 23(e)(2)(C)(i) and *Rutter* Factor 2: Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt.

Plaintiffs faced significant risks and costs should the litigation continue, making the ultimate outcome of the litigation uncertain. First, there was the risk that Plaintiffs' claims would not survive a motion to dismiss, a motion for class certification, a motion for summary judgment, and/or motions on damages methodologies and other issues. While Plaintiffs strongly believe in the merits of their

10

claims, data breach cases like this generally face substantial hurdles due to their cutting-edge nature and the rapidly evolving body of law that encompasses them. *See, e.g., Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 U.S. Dist. LEXIS 215430, at \*3 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."); *Gaston v. Fabfitfun, Inc.*, No. 2:20-cv-09534-RGK-E, 2021 U.S. Dist. LEXIS 250695, at \*6 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification."); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA, 2024 U.S. Dist. LEXIS 86740 (D.S.C. May 14, 2024) (denying motion for class certification in large data breach class action); *Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOx), 2022 U.S. Dist. LEXIS 210946, at \*8–9 (C.D. Cal. Nov. 21, 2022) (explaining that data breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury). Second, even if Plaintiffs were to prevail on a motion for class certification, successfully defeat the various motions Defendant would inevitably file, and proceed to trial, Plaintiffs still would face significant risks, costs, and delays from probable interlocutory and/or post-judgment appeals. Simply put, the litigation could last for years with no guarantee of relief. The Settlement achieved provides Settlement Class Members with substantial ***guaranteed*** relief whereas protracted litigation may not. Therefore, this factor also supports preliminary approval.

   4. ***Rutter* Factor 3: The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and**

11

**Expensive Litigation.**

The Settlement also merits preliminary approval because it guarantees Settlement Class Members meaningful and valuable relief for the harms they experienced, as well as protection from future fall-out from the Data Security Incident. Under the Settlement, Settlement Class Members may submit claims for: (i) reimbursement for Documented Losses up to $5,000.00 (SA, ¶¶ 59(a)(i)–(ii)); (ii) reimbursement for Lost Time for up to four (4) hours at a rate of $25.00 per hour (*id.* ¶ 59(b)); and (iii) three (3) years of one (1) bureau credit monitoring and identity theft protection services (*id.* ¶ 60). Alternatively, in lieu of receiving a reimbursement for Documented Losses and/or Lost Time, Settlement Class Members may elect to submit a claim for an Alternative Cash Payment of $55.00. (*Id.* ¶ 59(c)). The value of the Alternative Cash Payment alone is $2,566,245.00.[3] Most importantly, every Settlement Class Member who submits a timely and valid claim will receive the full amount of their claim. (*Id.* ¶¶ 58, 85). This immediate and significant recovery outweighs the uncertainty of future relief, meriting preliminary approval. *See Beasley*, 2023 U.S. Dist. LEXIS 81211, at *23 ("'The relatively early Settlement in this case benefits the Settlement Class immensely because they can immediately take advantage of Settlement benefits designed to mitigate and prevent future harm including identity monitoring' services.'") (citation omitted).

5. ***Rutter* Factor 4, Rule 23(e)(2)(C)(ii), and Rule 23(e)(2)(D): The Parties and their Counsel Aver that the Settlement is Fair and Reasonable, and the Method of Distributing Relief is Equitable and Effective.**

---

[3] Calculated by multiplying $55.00 by 46,659 Settlement Class Members.

The judgment of the Parties and their counsel also support finding that the Settlement is fair, adequate, and reasonable. In negotiating the Settlement, Class Counsel relied upon published reports documenting data breach and identity theft costs, their own experience in other data breach litigation, and reported settlements in other data breach class actions. (*See* Class Counsel Decl., ¶¶ 9, 16). The benefits available here compare favorably to what Class Members could recover if successful at trial and provide meaningful benefits to the Class in light of the uncertainties presented by continued protracted litigation. (*Id.* ¶¶ 13–14). In the experience of Class Counsel, who have litigated and settled numerous data breach cases, spoken to victims of other data breaches, and reviewed claims data from other settlements, the relief provided by this Settlement is an outstanding result for the Class. (*Id.* ¶ 15).

Moreover, the proposed Settlement is ***uncapped*** and does not provide any preferential treatment to the named plaintiffs or any segments of the Class. The only difference in treatment among Settlement Class Members is that those who incurred and submit claims for Documented Losses and Lost Time will appropriately and equitably receive payments in proportion to the amount of their losses, which must be supported with reasonable documentation and/or an attestation. (SA, ¶ 59). All Settlement Class Members who submit a valid claim for an Alternative Cash Payment will receive the same payment amount—$55.00. (*Id.* ¶ 59(c)). For these reasons, the plan of distribution is both equitable and effective.

Class Counsel will also apply for Service Awards for the Settlement Class Representatives in the amount of $2,500.00 each. The Tenth Circuit has held that

courts "regularly give incentive awards to compensate plaintiffs for the work they perform[]—their time and effort invested in the case." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). Service Awards are an "efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class." *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 U.S. Dist. LEXIS 144366, at \*16 (D. Colo. Dec. 22, 2010). Thus, Service Awards are appropriate given Plaintiffs' efforts and participation, and they do not constitute preferential treatment.

### 6. Rule 23(e)(2)(C)(iii): The Proposed Attorneys' Fees are Reasonable.

Class Counsel will also move the Court for an order awarding Class Counsel's attorneys' fees, costs, and expenses in an amount not to exceed $350,000.00. This amount is typical for data breach settlements of this size and caliber, will not diminish the relief made available to the Settlement Class, and will be fully briefed in Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards. (Class Counsel Decl., ¶ 14).

## IV.   THE NOTICE PROGRAM COMPLIES WITH DUE PROCESS

Rule 23(c)(2)(B) requires that for any proposed settlement under Rule 23(b)(3), notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Permissible means of notice include "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B).

14

The Parties mutually agreed to retain Simpluris, Inc. ("Simpluris") to perform settlement administration and notice services, subject to Court approval, the costs of which shall be paid by Trinity. (SA, ¶¶ 63, 85). The Parties propose notifying Class Members individually and directly via U.S. Mail. (*Id.* ¶¶ 42, 66–68). Simpluris will also establish a Settlement Website where settlement Class Members can view important deadlines and documents, as well as submit a Claim. (*Id.* ¶ 69). Settlement Class Members will have 60 days to submit a claim, file an objection, or opt-out of the Settlement. (*Id.* ¶¶ 21, 44–45, 71–72).

The proposed notice materials (attached to the Settlement Agreement as Exhibits A–C) are written in plain English and easy to understand. The Notices include, *inter alia*, a description of the litigation, the essential terms of the Settlement, the deadline to submit a claim, and information regarding the Settlement Class Member's rights to opt-out or object. Thus, the Notice Program satisfies the requirements of due process and Rule 23 and should be approved.

## V.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request the Court enter the Proposed Preliminary Approval Order submitted as **Exhibit D** to the Settlement Agreement.

Date: March 18, 2026

Respectfully submitted,

*/s/: Tyler J. Bean*

Tyler J. Bean
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151

15

Tel: (212) 532-1091
Email: tbean@sirillp.com

William B. Federman
**FEDERMAN & SHERWOOD**
10205 North Pennsylvania Avenue
Oklahoma City, OK  73120
Tel:  (405) 235-1560
Email: wbf@federmanlaw.com

Marc H. Edelson
**EDELSON LECHTZIN, LLP**
411 S. State Street, Suite N-300
Newtown, PA 18940
Phone: 215-867-2399

***Proposed Settlement Class Counsel***

## CERTIFICATE OF CONFERENCE

Pursuant to D.C.Colo.LCivR 7.1(a), I, the undersigned, certify I conferred with counsel for Defendants. Defendants do not oppose the relief sought.

*/s/: Tyler J. Bean*
Tyler J. Bean

## CERTIFICATE OF SERVICE

This is to certify that on March 18, 2026, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/: Tyler J. Bean*
Tyler J. Bean

16